UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANYON CAPITAL ADVISORS LLC,<br><br>Plaintiff,<br><br>v.<br><br>PG&E CORPORATION,<br><br>Defendant. | Case No. 20-cv-04949-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO RESET HEARING**<br><br>Re: Dkt. Nos. 6, 18 |

Pending before the Court is the motion to dismiss ("Motion") this appeal by Canyon Capital Advisors LLC ("Appellant" or "Canyon") filed by PG&E Corporation ("PG&E Corp.") and Pacific Gas and Electric Company ("Utility"), as debtors (collectively, the "Debtors," and as reorganized pursuant to the Plan (as defined below), "Reorganized Debtors"). Dkt. No. 6. Appellant filed this appeal of the Bankruptcy Court's order ("Confirmation Order") confirming the Debtors' Plan of Reorganization, dated June 19, 2020 ("Plan").[1] On October 29, 2020, the Court held a hearing on the Motion. Dkt. No. 22.[2] For the reasons set forth below, the Court **GRANTS**

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

[2] Counsel for Canyon failed to appear at the October 29 hearing. On October 26, 2020, the Clerk of the Court entered a notice to all parties clearly stating that the hearing would "be held telephonically," and provided a telephone number and access code for all counsel and others to use to access the line. Dkt. No. 15. After failing to appear at the hearing, counsel for Canyon filed a motion to reset the hearing, contending that it was the Court's website that caused his confusion, and indicating that he attempted to join a Zoom link for the hearing. Dkt. No. 18. This is the first time that anyone appearing in any matter before this Court (including *pro se* litigants) has attempted to access a plainly-noticed telephonic hearing via Zoom. Counsel for the Debtors (along with media members and counsel on other matters set for that time) had no trouble properly following the instructions, and attended the hearing. Counsel for Canyon had a responsibility to monitor the docket and follow the Court's unambiguous instructions for attending the hearing, and the Court finds unpersuasive counsel's efforts to shift responsibility rather than simply owning up to his failure to comply with basic instructions. Opposing counsel incurred fees preparing for and attending the hearing as scheduled, and the Court spent its time and resources preparing for and

the Motion.

## I. BACKGROUND

On January 29, 2019, the Debtors commenced voluntary cases for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California ("Bankruptcy Court"). These Chapter 11 Cases were subject to time constraints imposed by California Assembly Bill No. 1054 ("A.B. 1054"). Approved by California Governor Gavin Newsom on July 12, 2019, A.B. 1054 created the "Go-Forward Wildfire Fund," which is a multi-billion dollar safety net to compensate future victims of public utility fires and thereby "reduce the costs to ratepayers in addressing utility-caused catastrophic wildfires," support "the credit worthiness of electrical corporations," like the Debtors, and provide "a mechanism to attract capital for investment in safe, clean, and reliable power for California at a reasonable cost to ratepayers." A.B. 1054 § 1(a). Any successful reorganization was premised on the Debtors' ability to participate in the Go-Forward Wildfire Fund, and A.B. 1054 required the Debtors to obtain an order from the Bankruptcy Court confirming a chapter 11 plan of reorganization by June 30, 2020. *See* A.B. 1054 § 16, ch. 3, 3292(b).

Given this, the Bankruptcy Court established a briefing and hearing schedule with respect to various plan confirmation issues, including the appropriate rate of postpetition interest that unsecured creditors, like Canyon, are entitled to receive under the Bankruptcy Code on their otherwise allowed claims. *See* Order Establishing Pre-Confirmation Briefing and Hearing Schedule for Certain Legal Issues. BR Dkt. No. 4540.[3] After briefing and a hearing on that issue, the Bankruptcy Court issued its Memorandum Decision Regarding Postpetition Interest (BR Dkt. No. 5226, "PPI Memorandum"), holding that the Ninth Circuit's decision in *In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002), directs that the Debtors pay postpetition interest on allowed unsecured claims at the Federal Judgment Rate. PPI Memorandum at 6-7.

---

holding the hearing. In any event, having again thoroughly reviewed the record, the Court does not need additional argument to decide the motion, and thus **DENIES** the request to reset the hearing.

[3] "BR Dkt. No." references are to the Bankruptcy Court's docket, Case No. 19-30088 (DM) (Bankr. N.D. Cal.). "Dkt. No." references are to this Court's docket.

Given the connection between the postpetition interest question and a related dispute over the Noteholders' claims for make-whole premiums, the Bankruptcy Court waited to issue an order resolving both disputes at the same time. PPI Memorandum at 17. The make-whole dispute, coupled with the postpetition interest issue, implicated over $5 billion in potential claims against the Debtors' estates. *See* BR Dkt. No. 5519 ("Noteholder RSA Motion"), at 7.[4] The make-whole dispute was fully briefed and set to be argued when the Consenting Noteholders, including Canyon, reached a comprehensive settlement with the Debtors regarding all issues relating to the treatment of the Utility's prepetition funded debt under the Plan, including the issue regarding post-petition interest. *See id.* at 11-12. On January 27, 2020, the Debtors filed the Noteholder RSA Motion seeking the Bankruptcy Court's approval of the Noteholder RSA, which encompassed a comprehensive resolution of all outstanding disputes with Canyon and the other Consenting Noteholders, including both the postpetition interest issue and the make-whole dispute. *See id.*

Through the Noteholder RSA, Canyon agreed to (i) support the Plan, including its provisions concerning the payment of postpetition interest at the Federal Judgment Rate, (ii) vote in favor of the Plan, and (iii) otherwise act in good faith and take all actions as may be requested by the Debtors or the Shareholder Proponents that are "reasonably necessary or appropriate and all actions required by the Bankruptcy Court to support and achieve confirmation of the [Plan] and consummation of all transactions and implementation steps provided for or contemplated in [the Noteholder RSA] and the [Plan]." *Id.*, Ex. A § 2(a)(v), (viii). Canyon further agreed to refrain from "otherwise tak[ing] any action that could reasonably be expected to or would interfere with, delay, impede, or postpone the solicitation of acceptances, confirmation, *consummation*, or *implementation* of the [Plan] or the transactions contemplated in the [Plan]." *Id.*, Ex. A § 2(b)(vii) (emphasis added).

The Noteholder RSA Motion expressly represented to the Bankruptcy Court that the Noteholder RSA was "a global resolution of all issues relating to the [Plan's] treatment of the

---

[4] The Noteholder RSA is attached as Exhibit A to the Noteholder RSA Motion.

3

1  Utility's prepetition funded debt, including the disputes between the parties regarding the
2  appropriate rate of postpetition interest and entitlement to claims for make-whole premiums,
3  which together implicate over $5 billion in potential claims." Noteholder RSA Motion at 7. In
4  addition, pursuant to the terms of the Noteholder RSA, the Plan Proponents filed an amended
5  chapter 11 plan of reorganization on January 31, 2020, which incorporated the terms set forth in
6  the Noteholder RSA and included the release provisions contained in Section 10.9(b) of the Plan,
7  all of which were agreed to by the Consenting Noteholders, including Canyon. The Bankruptcy
8  Court approved the Noteholder RSA on February 5, 2020. *See* BR Dkt. No. 5637 ("Noteholder
9  RSA Order"). The following day, the Bankruptcy Court entered the PPI Order. BR Dkt. No.
10 5669 ("PPI Order").

11 It is undisputed that Canyon did not file any objection to the Plan. *See* Objection Summary
12 Chart, BR Dkt. No. 7528-1. In fact, not only did Canyon not object to plan confirmation, it
13 affirmatively voted in favor of the Plan on behalf of some of its debt, and voluntarily opted into
14 granting the releases set forth in Section 10.9(b) of the Plan. Declaration of Theodore E.
15 Tsekerides (Dkt. No. 6,-1, "Tsekerides Decl.") ¶¶ 2-3. After considering and addressing all
16 objections that were raised prior to and during the Confirmation Hearing, the Bankruptcy Court
17 issued the Confirmation Memorandum on June 17, 2020, BR Dkt. No. 8001, and entered the
18 Confirmation Order on June 20, 2020. BR Dkt. No. 8053.

19 The first notice of appeal from the Confirmation Order was filed on July 2, 2020 by the
20 Public Employees Retirement Association of New Mexico ("PERA"). BR Dkt. No. 8243.
21 Canyon filed its notice of appeal on July 17, 2020, BR Dkt. No. 8448 ("Canyon NOA"), twenty-
22 five days after the Bankruptcy Court entered the Confirmation Order, and fifteen days after the
23 first notice of appeal of the Confirmation Order was filed.

## II. DISCUSSION

### A. Canyon's Appeal Was Untimely

As a threshold matter, the Debtors contend that the appeal should be dismissed because Canyon failed to timely file its notice of appeal as required by Bankruptcy Rule 8002. Canyon contends that it filed a notice of appeal of the PPI Order – not the Confirmation Order – within 14

days of the first notice of appeal of the PPI Order under Bankruptcy Rule 8002(a)(3).

Bankruptcy Rule 8002(a)(1) states that "a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed." Under Bankruptcy Rule 8002(a)(3), however, "[i]f one party files a timely notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise allowed by this rule, whichever period ends later." "Bankruptcy Rule 8002 is not rigid. It avoids potential hardship by specifically providing deadline extensions." *In re Nucorp Energy, Inc.*, 812 F.2d 582, 584 (9th Cir. 1987). Accordingly, "the time provisions in Bankruptcy Rule 8002 are strictly enforced." *Id.* (internal quotations omitted). Put differently, Bankruptcy Rule 8002 builds in strictly enforced time extensions that appellants may use to their advantage. It is therefore well settled that the deadlines imposed by Bankruptcy Rule 8002 are "mandatory and jurisdictional." *In re Ozenne*, 841 F.3d 810, 814 (9th Cir. 2016) (quoting *Browder v. Dir., Dep't of Corr.*, 434 U.S. 257, 264 (1978)).

Here, the Bankruptcy Court entered the Confirmation Order on June 20, 2020. BR Dkt. No. 8053. Under Bankruptcy Rule 8002(a)(1), the deadline for Canyon to file a notice of appeal of the Confirmation Order would have been July 6, 2020. Canyon did not file its notice of appeal until July 17, eleven days after the jurisdictional deadline, and Canyon's notice of appeal was untimely under Bankruptcy Rule 8002(a)(1).

As noted, however, the first notice of appeal of the Confirmation Order was filed by PERA on July 2, 2020. BR Dkt. No. 8243. Therefore, Bankruptcy Rule 8002(a)(3) extended the deadline to file a notice of appeal of the Confirmation Order to no later than July 16, 2020. Canyon contends that its appeal is timely because the present appeal does not concern the Confirmation Order, but instead pertains to the PPI Order, and the Ad Hoc Committee of Holders of Trade Claims ("Trade Committee") filed the first notice of appeal of the PPI Order on July 3, 2020. BR Dkt. No. 8261. Therefore, according to Canyon, because the Trade Committee filed a timely notice of appeal of the PPI Order, Canyon had until July 17, 2020 to file an appeal of the PPI Order pursuant to Bankruptcy Rule 8002(a)(3). BR Dkt. No. 8448.

Although counsel for both parties have been unable to provide the Court with any authority

1    in support of their respective positions, a plain reading of Bankruptcy Rule 8002(a)(3) shows that
2    the date that the Trade Committee filed its Notice of Appeal is not the relevant benchmark because
3    it was not "the first notice" of appeal of the Confirmation Order that was filed.  *See* Fed. R. Bankr.
4    P. 8002(a)(3).  Accordingly, Canyon's assertion that the Trade Committee's appeal of the PPI
5    Order further extended Canyon's time to file the instant appeal finds no basis in the plain language
6    of Rule 8002(a)(3).  The rule refers only to "the date when the first notice [of appeal] was filed,"
7    not the date of the filing of the first notice of appeal with respect to any particular issue.

        Canyon counters that the PPI Order became a final order when the Bankruptcy Court confirmed the Plan, and that the Confirmation Order is only referenced to the extent it incorporates the PPI Order.  Opp. at 8 (citing *In re Sisk*, 962 F.3d 1133, 1141 (9th Cir. 2020) (hearing appeal of orders denying confirmation of earlier plans after entry of order confirming debtors' subsequent plan, where the Ninth Circuit had dismissed immediate appeals of the orders denying the plans as interlocutory, and stating that even though the bankruptcy court had confirmed the subsequent plan, "we may review the bankruptcy court's rejection of their initial plans")).  This argument is unpersuasive, and fails to explain how the PPI Order can be separated from the operative Confirmation Order.  In any event, *In re Sisk* (like the other cases cited by Canyon) does not support the conclusion that the PPI Order is a separate order subject to an entirely separate appeal, because the Ninth Circuit in *Sisk* never discussed the applicability of Bankruptcy Rule 8002.  The Court agrees that *Sisk* only stands for the proposition that the timely appeal of a final, appealable order brings up for review all prior interlocutory orders in the case.  962 F.3d at 1141.

        In fact, despite Canyon's contention that the Trade Committee appealed from the PPI Order, Opp. at 7, the Trade Committee made clear that it is appealing, at least in part, from the Confirmation Order:

> NOTICE IS HEREBY GIVEN that the Ad Hoc Committee of Holders of Trade Claims (the "<u>Trade Committee</u>") hereby appeals from (i) the Order Confirming Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 [D.I. 8053] entered on June 20, 2020 (the "<u>Confirmation Order</u>") and (ii) the related Memorandum Decision–Confirmation of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization [D.I. 8001] entered on June 17, 2020 (the "<u>Confirmation Memorandum</u>").

BR Dkt No. 8261 (underlining in original). Moreover, Canyon's Notice of Appeal indicates that it is an appeal from the Confirmation Order, and further indicates in a footnote that "[o]n July 3, 2020, the Ad Hoc Committee of Holders of Trade Claims filed an appeal of the Confirmation Order [D.I. 8261] . . . ." *See* Canyon NOA, BR Dkt. No. 8448.[5]

Accordingly, the Court must dismiss this appeal for lack of jurisdiction. *See In re Captive Res., Inc.*, 242 F.3d 380 (9th Cir. 2000) ("Because [appellant] failed to file a timely notice of appeal . . . we lack jurisdiction to address any of [appellant]'s contentions regarding the merits of the bankruptcy court's order.") (citation omitted); *In re Ybarra*, 243 F.3d 552 (9th Cir. 2000) ("[T]he untimely filing of a notice of appeal deprives the appellate court of jurisdiction to review the bankruptcy court's order.") (quoting *In re Delaney*, 29 F.3d 516, 518 (9th Cir. 1994)).

While the Court finds that Canyon's appeal is untimely and must be dismissed on that ground alone, the Court will also address in the alternative whether Canyon failed to object to the Confirmation Order, and whether Canyon released its right to appeal the PPI Order.

### B. Canyon Failed to Object to the Confirmation Order

Even if the appeal were timely, the Debtors contend it should still be dismissed because Canyon waived its right to appeal the Confirmation Order by failing to object to Plan confirmation. The Court agrees. As part of the Noteholder RSA, which was approved by the Bankruptcy Court (and clearly not challenged by Canyon), Canyon agreed to receive, among other things, postpetition interest at the Federal Judgment Rate (which it is now challenging).[6] Canyon contends that it previously objected to the PPI Order despite signing the Noteholder RSA that resolved the postpetition interest dispute after that objection. Opp. at 8.

As the Ninth Circuit has explained, "[r]equiring parties to make their objections clear on the record is not an onerous burden." *In re Wrightwood Guest Ranch, LLC*, 896 F.3d 1109, 1117 (9th Cir. 2018) (citation omitted). Therefore, although attendance and objection technically are no longer considered to be prerequisites to standing, a party's failure to object will still amount to a

---

[5] Canyon also filed this Notice of Appeal before this Court. Dkt. No. 1-1 at 2.
[6] As a party to the Noteholder RSA and bound by its terms, Canyon neither objected to Bankruptcy Court approval of the Noteholder RSA nor appealed the Bankruptcy Court's order approving the Noteholder RSA.

7

waiver or forfeiture of that party's right to appeal a bankruptcy court's order. *See id*. at 1116–17 ("When a party has not objected to an order in writing and the record contains no explicit indication that a party meant to object, a party has normally failed to preserve its objection to that order.").

The Court finds Canyon is bound by the Noteholder RSA and has waived objection to the Plan and the Confirmation Order, including its terms providing for payment of postpetition interest at the Federal Judgment Rate. Canyon contends that the relevant covenants in the Noteholder RSA expired before Canyon filed this appeal, and therefore its appeal is proper. Opp. at 10. This is because, according to Canyon, the covenants of the parties to the Noteholder RSA, including Canyon as a Consenting Noteholder, and the Debtors, applied only for the duration of a defined "Support Period." BR Dkt. No. 5519-1 at 5 (stating that all covenants listed in section 2 of the Noteholder RSA are only in place "for the duration of the Support Period"). "Support Period" was defined to end on the effective date of the plan, July 1, 2020. *Id.*; BR Dkt. No. 8252. Canyon filed its notice of appeal on July 3, 2020, outside the Support Period, and therefore (according to Canyon) at a time when the covenants no longer had any application.

The Court finds two fatal flaws in that contention. First, Canyon's assertion that the "Support Period" under the Noteholder RSA terminated on the Plan's Effective Date, July 1, 2020, Opp. at 10, does not alter the fact that if Canyon wanted to shift positions and dispute the rate of postpetition interest (to which it expressly agreed in the Noteholder RSA), it was still required to raise that issue at the confirmation hearing instead of waiting for the Noteholder RSA to expire before raising the issue on appeal. Second, the notion that Canyon was free to appeal the Confirmation Order after the Effective Date is illogical and would undermine the entire purpose of the Noteholder RSA: to resolve all Plan-related disputes, especially those over postpetition interest. To accept Canyon's argument would mean that Canyon could support the Plan, help implement it, agree to accept a certain postpetition interest rate, derive benefits from it, and then execute an about-face and appeal those parts of the Plan it no longer likes. The Court rejects this attempt.

In fact, Canyon affirmatively voted in favor of the Plan on some of its debt. Canyon

claims this conclusion is "misleading" because it is appealing the PPI Order regarding unimpaired claims, and unimpaired claims were not permitted to vote on a plan. Opp. 10; 11 U.S.C. § 1126(f). While it is true that Canyon held "HoldCo Funded Debt Claims" under Class 3A of the Plan, Opp. at 10, n.5, Canyon fails to address that it also held "Utility Funded Debt Claims" in Class 3B-IV of the Plan in the amount of approximately $108 million, which received payment of postpetition interest at the Federal Judgment Rate, and which Canyon voted in favor of the Plan. *See* Plan § 1.220 (providing that Utility Funded Debt Claim Interest is calculated at the Federal Judgment Rate); Plan § 4.21 ("The Utility Funded Debt Claims are Impaired, and holders of Utility Funded Debt Claims are entitled to vote to accept or reject the Plan"); *see also* Supplemental Declaration of Theodore Tsekerides (Dkt. No. 12-1, "Supp. Decl.") ¶ 3. Canyon's prior commitment to supporting the Plan, its participation in the Noteholder RSA, its vote to accept the Plan, and its lack of objection to the Plan contradict any suggestion that Canyon preserved any objection to, or reserved any right to appeal confirmation of, the Plan. Because Canyon knowingly and voluntarily waived its right to object to, let alone appeal, the Confirmation Order and the PPI Order, dismissal is warranted because the Bankruptcy Court "did not receive formal notice of [Canyon's] positions until [Canyon] filed its notice of appeal." *See In re Wrightwood Guest Ranch*, 896 F.3d at 1114 (dismissing appeal).[7]

### C. Canyon Released its Right to Appeal the PPI Order

Finally, even if Canyon's appeal were timely, and even if Canyon's failure to object to the Confirmation Order was not fatal, the appeal should be dismissed because Canyon released its right to pursue any further litigation related to the treatment of its prepetition claims under the Plan, including the appropriate rate of postpetition interest, and the Confirmation Order enjoins Canyon from further litigating this issue. Mot. at 8.

---

[7] Canyon contends it would have been "futile" to object to plan confirmation on the "exact same grounds that it and others had already raised and that the Bankruptcy Court had rejected." Opp. at 9. Even setting aside that Canyon was a Plan supporter at that time, the Trade Committee did just that when it filed a short objection notifying the Bankruptcy Court and the Debtors of its position "for procedural purposes solely to preserve the Trade Committee's **right to appeal** any order confirming the Plan as a final order on the postpetition interest issue." *See* Objection of the Ad Hoc Committee of Holders of Trade Claims, at 10, BR Dkt. 7288 (emphasis added).

Canyon contends that the injunction and release provisions contained in the Plan and the Confirmation Order do not apply to appeals, and that applying those provisions here would lead to an inequitable result. Opp. at 12. Although Canyon notes that sections 10.6 (injunction), 10.8 (exculpation), and 10.9 (release) of the Plan do not mention the PPI Order or appeals, Opp. at 11, the language of Section 10.9(b) of the Plan (and Paragraph 56 of the Confirmation Order) provides that the "Releasing Parties," a group that undisputedly includes Canyon, "forever released and discharged" the Debtors, the Reorganized Debtors, and the other Released Parties:

> to the maximum extent permitted by law . . . from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever . . . that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, . . . the Chapter 11 Cases, . . . the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, . . . the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, . . . [and] the Noteholder RSA.

The Debtors contend that Canyon's appeal and any clams for additional postpetition interest plainly fall within the scope of Section 10.9(b) of the Plan, and thus have been released. Mot. at 9.

Similarly, Section 10.9(f) of the Plan (and Paragraph 60 of the Confirmation Order) provides that:

> [t]he Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan.

Section 10.6 of the Plan (and Paragraph 52 of the Confirmation Order) provides also that:

> all Entities who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) **commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the**

> **foregoing** . . . (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan.

The Debtors submit that Canyon waived its right to pursue this appeal because, by entering into the Noteholder RSA, Canyon agreed to accept the Plan, including its provisions providing for postpetition interest at the Federal Judgment Rate and its release and injunction provisions. *See* Noteholder RSA Mot., Ex. A ("By accepting distributions pursuant to this Plan," Canyon "affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in [Section 10.6(b) of the Plan]."). Canyon strains to circumvent the clear language of the Plan injunction and release provisions by arguing that the terms "any suit, action or other proceeding" do not encompass an appeal. Opp. at 11.

The Court disagrees. The Plan's injunction and release provisions do not bar all appeals, but they do bar this appeal because Canyon is a "Releasing Party" under Section 10.6 of the Plan (and Paragraph 56 of the Confirmation Order). *See* Mot. at 9. Therefore, the Court finds that the Noteholder RSA and the Confirmation Order plainly enjoin Canyon from prosecuting any suit, action or other proceeding related to its claims, including its appellate assertion that Canyon is entitled to payment of postpetition interest on its claims at a rate other than the Federal Judgment Rate. Accordingly, the Court finds that this is another independent ground to dismiss this appeal.

### III. CONCLUSION

For the foregoing reasons, the Reorganized Debtors' Motion to Dismiss the appeal is **GRANTED**. The Clerk is directed to close the case and terminate this appeal.

**IT IS SO ORDERED.**

Dated: 12/14/2020

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

11